## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DUSTYN POLK,

                    **Plaintiff**,

v.

GARY BUNTING, et al.,

                    **Defendants**.

Case No. 23-2415-DDC-ADM

### MEMORANDUM AND ORDER

Pro se[1] plaintiff Dustyn Polk filed suit against defendants Gary Bunting, Kelvin Bellinger, Vincent Gonzalez, and Jay Armbrister. Defendants all are employees of the Douglas County Correctional Facility (DCCF), where plaintiff was detained pending his state court criminal trial. Plaintiff's lawsuit alleges that defendants unlawfully failed to accommodate his practice of Norse Paganism. Plaintiff filed a Motion for Partial Summary Judgment (Doc. 66), and defendants filed a Motion for Summary Judgment (Doc. 70). This Order grants in part and denies in part defendants' Motion for Summary Judgment (Doc. 70). Also, it denies plaintiff's Motion for Partial Summary Judgment (Doc. 66). The court explains these rulings, starting with factual background.

---

[1] Plaintiff proceeds pro se, so the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But the court does not assume the role of plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And our Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Id.* (citation and internal quotation marks omitted).

## I.    Background

The following facts are uncontroverted.[2]  They describe the period relevant to plaintiff's

lawsuit.

Plaintiff was a pretrial detainee at the DCCF.  Doc. 44 at 2 (2nd Am. Compl.); Doc. 49 at

1 (Answer ¶ 2).[3]  Defendant Jay Armbrister served as the Sheriff of Douglas County, Kansas.

Doc. 44 at 2 (2nd Am. Compl.); Doc. 49 at 1 (Answer ¶ 2).  Defendant Gary Bunting was an

employee of the Douglas County Sheriff's Office.  Doc. 44 at 2 (2nd Am. Compl.); Doc. 49 at 1

(Answer ¶ 2).  He held the rank of "Major" and served as the DCCF Facility Administrator.

Doc. 44 at 2 (2nd Am. Compl.).  Defendant Kelvin Bellinger was employed as a "Captain" for

the Douglas County Sheriff's Office.  Doc. 44 at 2 (2nd Am. Compl.); Doc. 49 at 1 (Answer ¶ 2).

---

[2]    Plaintiff wholly failed to controvert any facts defendants offered in their Motion for Summary Judgment.  *See generally* Doc. 76.  The court thus accepts those record-supported facts as uncontroverted. D. Kan. Rule 56.1 ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion[.]"); *see also Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" when non-movant fails to respond timely).

But plaintiff did submit a few facts of his own in his Motion for Partial Summary Judgment. Doc. 66 at 3–4.  Defendants controvert some of those facts.  Doc. 72 at 2–4.  Defendants' objections mostly assert that plaintiff hasn't adduced admissible evidence to support his purported facts.  *See id.*  The court agrees.  Plaintiff hasn't included citations to admissible evidence for some of his purported facts. So, the court doesn't rely on those facts.  And while the court is cognizant that it must treat cross-motions for summary judgment separately, *see Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979), neither party controverts facts that the other party properly has supported with record evidence.

[3]    The court freely cites plaintiff's Second Amended Complaint (Doc. 44) when defendants have admitted facts from that pleading in their Answer (Doc. 49) or their Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. 71).  *See* Fed. R. Civ. 56(c)(1)(A) (explaining that party moving for summary judgment may support facts with "admissions"); *Saghian v. Shemuelian*, 835 F. App'x 351, 353 (10th Cir. 2020) ("'[A]dmissions in the pleadings are binding . . . and may support summary judgment[.]'" (quoting *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314, 1315 (8th Cir. 1990))); 10A *Wright & Miller's Federal Practice & Procedure* § 2723 (4th ed. updated May 2025) ("'[A]dmissions in the brief of the party opposing the motion may be used in determining that there is no genuine dispute as to any material fact, since they are functionally equivalent to 'admissions[.]'" (footnote omitted)).

Finally, defendant Vincent Gonzalez was an employee—with the rank of "Lieutenant"—for the Douglas County Sheriff's Office. Doc 44 at 2 (2nd Am. Compl.); Doc. 49 at 1 (Answer ¶ 2).

The DCCF provides inmates with an Inmate Handbook Rules and Regulations, which offers guidance on the jail's operations and procedures. Doc. 71-1 at 1 (Bunting Decl. ¶ 5). The DCCF Handbook allows inmates to possess soft bound religious texts provided by the jail. *Id.* at 2 (Bunting Decl. ¶ 8); Doc. 71-2 at 4 (DCCF Handbook § 15). The Handbook also explains the jail's processes for communicating with staff members and filing internal grievances. Doc. 71-2 at 4 (DCCF Handbook §§ 17, 18). One of Major Bunting's duties as Facility Administrator required him to conduct a final review of inmate grievances. Doc. 71-1 at 1 (Bunting Decl. ¶ 4). Both Lieutenant Gonzalez and Captain Bellinger also played a role in reviewing plaintiff's grievances and appeals. *Id.* at 1–2 (Bunting Decl. ¶¶ 6–7).

### *Text-Ownership Claim*

 Some of the religious texts "from more traditional religions" in the DCCF were donated to the facility. *Id.* at 2 (Bunting Decl. ¶ 8). When inmates requested, the DCCF would give them these donated texts. *Id.* Plaintiff requested a religious text that he could own "based on his observation of" labels placed inside the cover of books and "in other religious texts maintained in the DCCF." *Id.* (Bunting Decl. ¶ 9).

Plaintiff filed a Grievance Appeal on June 20, 2022. Doc. 44 at 9 (2nd Am. Compl.); Doc. 49 at 1 (Answer ¶ 5); Doc. 71-6 at 1 (Gonzalez Decl. ¶ 5); *id.* at 5. One of the items that plaintiff complained about is that the DCCF "provides religious texts for Christians, Church of Satan, and Muslim practitioners, but provides no texts for any 'pagan' faiths, most notable Wicca and Asatru." Doc. 71-6 at 9 (emphasis omitted) (inmate Grievance Form); *see also* Doc. 1-1 at

20.[4]  In response, the DCCF personnel spoke with plaintiff about his religion.  Doc. 71-1 at 2

(Bunting Decl. ¶ 10).  Plaintiff informed them that he followed Norse Paganism.  *Id.*  Major

Bunting determined plaintiff would have to identify the book he needed for his religion.  *See id.*

(Bunting Decl. ¶ 11).  Lieutenant Gonzalez had handled the bulk of the review, research, and

investigation of plaintiff's complaints.  Doc. 71-6 at 1 (Gonzalez Decl. ¶ 5).  He thus met with

plaintiff to discuss his religious-text grievance.  *Id.* (Gonzalez Decl. ¶ 6).

In response to plaintiff's grievance, the DCCF purchased a copy of *Poetic Edda*.  *Id.* at

1–2 (Gonzalez Decl. ¶ 8); Doc. 71-1 at 2–3 (Bunting Decl. ¶ 13); Doc. 71-7 at 1 (Req. for

Admiss. ¶ 1).  The DCCF gave plaintiff the copy of *Poetic Edda* for use in his cell.  Doc. 71-7 at

1 (Req. for Admiss. ¶¶ 2–3).  Originally, the DCCF staff attached a label to the copy given to

plaintiff.  Doc. 71-1 at 3 (Bunting Decl. ¶ 14).  That label identified the text as property of the

DCCF.  *Id.*  The DCCF staff responsible for labeling the text as DCCF property were "under the

impression that all religious based texts were provided to inmates to keep in their possession

until release and then returned to the library."  *Id.*  In reality, the DCCF gave Bibles and Qur'ans

to detainees upon release "mainly" because those texts were donated to the DCCF.  *Id.* (Bunting

Decl. ¶ 15).

The DCCF later reversed course and declared that plaintiff's copy of the *Poetic Edda* was

his to keep.  *Id.* (Bunting Decl. ¶ 16).  The DCCF changed the label in the book to reflect

plaintiff's ownership.  *Id.*

---

[4]      Plaintiff's statement of facts asserts that Lieutenant Gonzalez wrote "'that this facility provides
sacred texts for Christian, Islamic, and other faiths, but not Pagan.'"  Doc. 66 at 3 (quoting Doc. 1-1 at
20).  The record support for this quotation makes clear that Lieutenant Gonzalez was paraphrasing
plaintiff's grievance, not asserting the point as a fact:  "[O]ne of *your* foremost complaints is that this
facility provides sacred texts for Christian, Islamic, and other faiths but not [P]agan."  Doc. 1-1 at 20
(emphasis added).  Regardless, it appears uncontroverted that the DCCF did not have religious texts
available for plaintiff's religion prior to the filing of his grievance.  *See id.*

### *Religious-Meal Claim*

Major Bunting was also responsible for investigating and responding to a separate grievance that plaintiff filed with the DCCF.  *Id.* (Bunting Decl. ¶ 18).  This grievance concerned "newly requested additional religious holidays."  *Id.*  Plaintiff asked the DCCF to give him holiday meals on certain Norse Pagan holidays.  *See id.* (Bunting Decl. ¶ 19).  Major Bunting spoke with plaintiff, and in March 2023, they agreed on this schedule of Pagan holidays:

> Yule:  December 21–31
> Imbolg:  February 2–3
> Spring Equinox:  March 21–22
> Beltaine:  April 30–May 1
> Summer Solstice:  June 21–22
> Lughnasadh:  August 1–2
> Fall Equinox:  September 21–22
> Samhain:  October 31.

*Id.* at 3–4 (Bunting Decl. ¶ 20); Doc. 71-5 at 1 (documenting identified holidays on inmate Grievance Solution Form).  The DCCF agreed to provide plaintiff with "a double portion tray and 'sack meal'" at the dinner mealtime and to allow him to keep the sack lunch to eat at his leisure.  Doc. 71-1 at 4 (Bunting Decl. ¶ 21); Doc. 71-5 at 1.

Nearly a year later, in February 2024, plaintiff submitted another grievance, requesting holiday accommodations on many more days.  Doc. 71-1 at 4 (Bunting Decl. ¶ 22); Doc. 71-4 at 2 (Inmate Grievance Form).  Plaintiff, in essence, requested "new holy days and dietary accommodations, beyond the ones" originally agreed.  Doc. 71-1 at 4 (Bunting Decl. ¶ 23).  Plaintiff's grievance expressed his "belief that many days of the week were named after Norse deities" and that he needed to celebrate approximately 260 days a year.  *Id.* (Bunting Decl. ¶ 23); Doc. 71-4 at 2 (requesting to modify existing agreement to recognize five days a week as "high holy days").  Plaintiff's grievance requested—for each holy day—a "double portioned breakfast

tray" and two "feast" bags. Doc. 71-4 at 12. His grievance form included a description of what he required for the "feast" bags. *Id.* at 12–13.

The DCCF rejected plaintiff's new request. Doc. 71-1 at 5 (Bunting Decl. ¶ 25). Major Bunting based his rejection—in part—on his research, which revealed no support for plaintiff's understanding of Norse Pagan practice. *Id.*

After briefing on these motions was complete, plaintiff was sentenced to life in prison and then transferred away from the DCCF.[5]

### *Plaintiff's Suit*

Plaintiff filed this action in Douglas County, Kansas District Court. Doc. 1-1. Defendants removed it to this court. Doc. 1. Plaintiff's Second Amended Complaint (Doc. 44) asserts claims based on two discrete grievances: text ownership and holiday meals. The court

---

[5]    Defendants asserted this fact—that plaintiff was transferred to another carceral facility—for the first time in their Reply. *See* Doc. 81 at 1. This late-breaking development makes sense. Plaintiff wasn't transferred until after he already had filed his Response. *See id.* Still, the court ordinarily wouldn't rely on facts offered for the first time in a reply brief. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (holding district court abused its discretion when "it relied on new evidentiary materials presented for the first time" in a reply brief). But here, plaintiff's transfer is a matter of public record. *See KASPER – Offender Population Search*, Kansas Department of Corrections, https://kdocrepository.doc.ks.gov/kasper/search/results (last visited May 28, 2025) (showing Hutchinson CF-Central as plaintiff's current location); *see also Kansas v. Polk*, No. 2018-CR-000853, Doc. 50 at 3 (Douglas Cnty. Dist. Ct. Nov. 14, 2024) (showing plaintiff sentenced to life imprisonment without possibility of parole for 25 years). So the court can take judicial notice of it. *Valiente v. Dineequity, Inc.*, No. 08-2416-KHV, 2009 WL 1226743, at *1 (D. Kan. May 1, 2009) ("Courts often take judicial notice of various public records, including legislative committee reports and publications made by various administrative agencies."); *see also* Fed. R. Evid. 201(b)(2) (explaining that court may take judicial notice of facts "not subject to reasonable dispute because" their veracity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Relatedly, the court directs the Clerk to update plaintiff's address on the docket and mail a copy of this Order to plaintiff at:

Dustyn D Polk, KDOC# 0131944
Hutchinson CF-Central
P.O. Box 1568
Hutchinson, KS 67504-1568

tackles the claims based on these grievances, in turn.  But first, the court reviews the governing

standard for adjudicating a motion for summary judgment.

## II.        Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no

genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence

and make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*,

625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243,

1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a

verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is

essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart

Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary

judgment and the burden of establishing that summary judgment is appropriate as a matter of

law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v.

Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the

moving party "'need not negate the non-movant's claim, but need only point to an absence of

evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO,

Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond

adequately, "the district court may not grant the motion without first examining the moving

party's submission to determine if it has met its initial burden of demonstrating that no material

issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed*, 312 F.3d at 1194–95.

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

While a court can treat cross motions for summary judgment separately, and "the denial of one does not require the grant of another[,]" *Buell Cabinet*, 608 F.2d at 433, it also may address the legal arguments together, *Berges v. Standard Ins.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010). Here, the two motions, and their legal arguments, overlap—and substantially so. The court thus exercises its discretion and addresses together the legal arguments made by the dueling motions.

III.        **Analysis**

This Order's analysis unfolds in this sequence:  *First*, the court concludes plaintiff's requests for equitable relief are moot.  *Second*, the court takes up plaintiff's claims centered on the religious-text dispute, concluding that defendants are entitled to summary judgment on those claims.  *Third*, the court addresses the holiday-meal claims and holds that triable issues of fact remain.

A.        **Declaratory and Injunctive Relief**

As an initial matter, plaintiff's efforts to secure declaratory and injunctive relief are moot. Plaintiff's operative pleading seeks "[i]njunctive, declaratory[,] and/or equitable relief[.]"  Doc. 44 at 8.  Such relief isn't available because plaintiff no longer resides in the DCCF. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (explaining that when a detainee "has been transferred away" from the facility of which he complains, "declaratory and injunctive relief will not be available").  The court thus lacks subject matter jurisdiction to grant plaintiff the declaratory and injunctive relief he seeks.  *See Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." (internal quotation marks and citation omitted)); *see also Valenzuela v. Silversmith*, 699 F.3d 1199, 1204 (10th Cir. 2012) (explaining that mootness "implicates . . . subject matter jurisdiction").  So the court dismisses as moot plaintiff's claims to the extent they seek declaratory or injunctive relief.

The court moves, next, to plaintiff's religious-text allegations.

B.        **Religious Text**

Plaintiff asserts an Equal Protection claim based on defendants' handling of his request that the DCCF furnish him a religious text.  Doc. 44 at 5.  As the court explains, plaintiff has

failed to demonstrate that triable issues remain on this claim, so the court grants defendants summary judgment against this claim.

A plaintiff alleging an equal-protection claim bears "the burden of proving the existence of purposeful discrimination causing an adverse effect." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (internal quotation marks and citation omitted). "Discriminatory intent can be proved directly or circumstantially." *Id.* "Direct proof is showing that a distinction between groups of persons appears on the face of a state law or action." *Id.* (internal quotation marks and citation omitted). Meanwhile, circumstantial "proof is showing that the plaintiff was treated differently from similarly situated persons who are 'alike in all relevant respects.'" *Id.* (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)).

Plaintiff can't show either purposeful discrimination or an adverse effect, so his equal-protection claim based on ownership of religious text fails.

Start with discriminatory intent. The crux of plaintiff's claim argues that defendants treated him differently than persons practicing other religions by allowing those other people to keep their religious texts upon release. *See* Doc. 76 at 2–8. In contrast, plaintiff says, defendants originally told plaintiff that the copies of *Poetic Edda* that the DCCF purchased were DCCF property. *See id.* But there's a critical difference. The DCCF purchased *Poetic Edda* specifically for plaintiff. On the other hand, the DCCF received other religious texts as donations. It makes sense that an institution would safeguard property it had purchased differently from property that people donate on a recurring basis. So, these "facts are not sufficiently malleable to somehow consider" plaintiff similarly situated to other inmates, *Requena*, 893 F.3d at 1210—ones who practiced mainstream religions for which texts *were donated* and *readily available* to distribute.

Even if plaintiff had shouldered his burden and offered summary judgment evidence that persons practicing other religions were similarly situated, the court still would grant summary judgment against this claim. That's so because plaintiff didn't suffer any "adverse effect." *Ashaheed*, 7 F.4th at 1250. As an initial matter, defendants gave plaintiff access to *Poetic Edda* at all times. Doc. 71-7 at 1 (Req. for Admiss. ¶¶ 2–3). So plaintiff—like all inmates at the DCCF—had access to a religious text in his cell. *See id.* What's more, at some point, the DCCF forfeited its ownership interest in plaintiff's copy of *Poetic Edda*. It gave plaintiff fee-simple ownership of the text, and plaintiff took it with him after he transferred out of the DCCF, post-sentencing. Given this history, plaintiff suffered no adverse effect even if the DCCF treated him differently than similarly situated detainees. On this record, no reasonable factfinder could conclude otherwise. The court thus grants summary judgment against plaintiff's equal-protection claim based on text ownership. Likewise, the court denies plaintiff's request for partial summary judgment on this claim.[6]

---

[6]   It's not clear whether plaintiff intends to advance a RLUIPA claim based on the text-ownership events. *See* Doc. 76 at 6 ("The purpose of the RLUIPA inclusion . . . is . . . to establish the foundation for finding violation of KPFRA, instead."). Regardless of plaintiff's intent, the court concludes defendants are entitled to summary judgment against any RLUIPA claim based on text ownership for two reasons.

*First*, plaintiff originally asserted only an Equal Protection claim based on text ownership. *See* Doc. 18 at 5 ("[P]laintiff has clarified in his briefs that this claim relating to his first grievance issue is asserted solely under the Equal Protection Clause of the 14th Amendment to the federal constitution (through Section 1983)."). The court granted plaintiff leave to amend some of his claims, *id.* at 1, 19, but the court never offered leave for plaintiff to add new claims based on the text-ownership facts. And plaintiff never asked the court to permit that filing. So to the extent plaintiff's claim asserts a new claim on these facts, the court declines to consider it. *See* Fed. R. Civ. P. 15(a)(2) (explaining that "a party may amend its pleading only with . . . the court's leave" after it has failed to amend as a matter of course); *see also Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1278 (10th Cir. 2024) (explaining that the law-of-the-case doctrine dictates that "once an issue has been resolved in a judicial proceeding, it ordinarily should not be reexamined by the court").

*Second*, plaintiff hasn't adduced *any* evidence that defendants imposed a substantial burden on his religious practice. *See Yellowbear v. Lampert*, 741 F.3d 48, 53 (10th Cir. 2014) (RLUIPA inmate must show "(1) religious exercise is (2) substantially burdened by prison policy"). Plaintiff had access to the religious text that the DCCF purchased for him at all times, and the DCCF gave plaintiff the text to keep

The court now turns to plaintiff's claims based on defendants' refusal to accommodate his holiday-meal requests.

### C.    Holiday Meals

Plaintiff asserts a series of claims based on defendants' refusal to accommodate his holiday-meal request.  These include a Fourteenth Amendment Equal Protection claim; a First Amendment Free Exercise claim; a claim under the Religious Land Use and Institutionalized Persons Act of 2000; a claim under the Kansas Preservation of Religious Freedom Act; and a claim under Sections 1 and 7 of the Kansas Constitution Bill of Rights.  Doc. 44 at 6–7.  The court addresses these claims sequentially.  It then concludes that defendants don't deserve qualified immunity on plaintiff's surviving claims.  Finally, this Order grants summary judgment against any § 1983 municipal liability claims plaintiff intended to assert.

### 1.  Fourteenth Amendment Equal Protection

Defendants are entitled to summary judgment on plaintiff's holiday-meal claim predicated on the Fourteenth Amendment.  The same equal-protection standard the court articulated above applies equally to plaintiff's holiday-meal claim.  Plaintiff's claim fails because he never adduced evidence that the DCCF had treated similarly situated persons differently.

 Plaintiff's brief argues that detainees who celebrate Ramadan receive accommodations from the DCCF.  Doc. 76 at 12.  He claims those detainees "appropriately" receive a meal before sunrise and "double trays at dinner, served after sundown, each and every day."  *Id.*  But the summary judgment record contains zero evidence to support this claim.  Plaintiff's brief doesn't

---

after he transferred away from the DCCF.  Any harm plaintiff suffered thus was de minimis and insufficient to rise to the level of a substantial burden.  *Cf. Abdulhaseeb*, 600 F.3d at 1321 ("We are unwilling to conclude, however, that every single presentation of a meal an inmate considers impermissible constitutes a substantial burden on an inmate's religious exercise."); *id.* at 1325 (Gorsuch, J., concurring) ("RLUIPA proscribes only government actions that *substantially* burden religious exercise." (emphasis in original)).

qualify as competent evidence.  10A *Wright & Miller's Federal Practice & Procedure* § 2723 (4th ed. updated May 2025) (explaining that summary judgment motion can't "be defeated by factual assertions in the brief of the party opposing it, inasmuch as documents of this character are self-serving and not probative evidence of the existence or nonexistence of any factual issues" (footnote omitted)).  Without any evidence to support his allegation that he received different treatment than similarly situated detainees, plaintiff's claim fails.  The court thus grants summary judgment against plaintiff's Fourteenth Amendment claim based on defendants' refusal to accommodate his holiday-meal request.

Plaintiff's First Amendment Free Exercise claim fares better, as the court explains, next.

## 2.  First Amendment Free Exercise

Plaintiff asserts a claim under the First Amendment Free Exercise Clause.  Doc. 44 at 7. As with plaintiff's other constitutional claims, the court construes this claim as one under § 1983.

"It is well-settled that 'inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'"  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation cleaned up) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  Still, "'a prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests.'"  *Id.* (quotation cleaned up) (quoting *O'Lone*, 482 U.S. at 349).  The court performs a two-step inquiry to determine the viability of a prisoner's Free Exercise claim.  *Id.  First*, "the prisoner-plaintiff must show that a prison regulation 'substantially burdened sincerely-held religious beliefs.'"  *Id.* (quotation cleaned up) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  In other words, "the first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held."  *Id.* (quotation cleaned up).  The Tenth Circuit

has explained that a burden on a religious exercise rises to the level of being "substantial" when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

*Yellowbear*, 741 F.3d at 55.[7]

*Second*, "prison officials-defendants may 'identify the legitimate penological interests that justified the impinging conduct.'" *Kay*, 500 F.3d at 1218 (quoting *Boles*, 486 F.3d at 1182). The court then weighs the reasonableness of defendants' conduct. *See id.* at 1219; *O'Lone*, 482 U.S. at 349 (explaining a prison regulation that "impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests" (internal quotation marks and citation omitted)).[8]

Here, defendants just argue the first step. For reference, here's the entirety of defendants' argument on plaintiff's Free Exercise claim:

---

[7]    *Yellowbear* explained what a "substantial burden" is in the context of a RLUIPA claim, not a Free Exercise Claim. 741 F.3d at 55. But as the court already has explained, the substantial-burden inquiry is the same under RLUIPA and the Free Exercise Clause. Doc. 18 at 9; *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (explaining that the difference between RLUIPA and Free Exercise claims "lies in the type of government interest needed to justify a substantial burden, not what constitutes a substantial burden").

[8]    The Supreme Court has identified factors "to assist lower courts in making the reasonableness determination," which include

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181 (quoting *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)); *see also Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (same).

> Here, the Defendants have not substantially burdened [plaintiff's] "sincerely-held religious beliefs." In 2023 DCCF staff conferred with [plaintiff] to establish a list of dates and events that he held as holy for which he was provided with his desired holy meal.  Now, he makes no claim that the list of dates has been reduced but has taken the unique approach that because the name of each day of the week had some significance as a holy day, he now claims he is entitled to celebrate each day with a holy meal.  Quite simply, the Court need not look to determine whether there is a substantial burden on the right of free exercise by denying the additional holy days because [plaintiff] may still exercise his holy days as originally agreed to but simply not every day of the week.

Doc. 71 at 19.  Unfortunately for defendants, that *ipse dixit* argument won't carry the day.  As the court understands it, defendants argue that because plaintiff has changed his dietary request, defendants are entitled to summary judgment.  But defendants never explain why governing law compels the result they desire.  And the court can't provide that explanation in the absence of argument from defendants.  *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (explaining that the court "will not craft a party's arguments" for it).

The issue for defendants is that our Circuit repeatedly has explained that both inquiries involved in step one—whether plaintiff's belief is sincerely held and whether defendants' conduct substantially burdened plaintiff's religious exercise—are inapt for summary judgment. *Kay*, 500 F.3d at 1219 ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment and therefore the issue of sincerity can rarely be determined on summary judgment." (quotation cleaned up)); *Reed v. Bryant*, 719 F. App'x 771, 778 (10th Cir. 2017) ("It is also well established that depriving a prisoner of a religious diet he has requested pursuant to his sincerely held religious beliefs at minimum creates a triable issue of fact on whether this constitutes a substantial burden on the inmate's religious exercise."); *see also Yellowbear*, 741 F.3d at 54 ("When inquiring into a claimant's *sincerity*, then, our task is . . . limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court[.]" (emphasis in original)).  In other words, plaintiff—through his grievances

and his suit—has asserted, at least implicitly, that he has a sincere belief in the holiness of certain days and must receive a specific diet to honor that belief. The court—at this stage of the proceeding—can't conclude that plaintiff's belief isn't sincere or that defendants' refusal to accommodate his request didn't burden substantially his religious exercise.

As the court understands it, defendants contend that plaintiff's evolving request for dietary accommodations prove that his beliefs aren't sincerely held, or that defendants' failure to accommodate doesn't substantially burden plaintiff's religious practice. No doubt, a reasonable trier of fact could agree. But our Circuit plainly has expressed that those conclusions require credibility assessments. In other words, the court can't conclude that no rational factfinder could credit plaintiff's position. Also, the mere fact that plaintiff changed his request doesn't doom his claim. *See Jones v. Slade*, 23 F.4th 1124, 1141 (9th Cir. 2022) ("RLUIPA not only protects an inmate's past religious practices, but also changes in his religious practice within a tradition or conversion from one tradition to another."). In sum, at step one of the Free Exercise inquiry, a "reasonable fact finder could rule [plaintiff's] way when viewing the evidence in the record in the light most favorable to him." *Yellowbear*, 741 F.3d at 56. So, defendants aren't entitled to summary judgment on that basis.

At step two, defendants never argue that legitimate penological goals justify their refusal of plaintiff's holiday-meal requests. *See generally* Doc. 71. And the court can't grant summary judgment on an argument that the movants didn't advance. *See Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012) ("Arguments not clearly made in a party's opening brief are deemed waived.").

In short, genuine issues of material fact remain on the questions whether plaintiff's holiday-meal request reflected a sincerely held religious belief, and whether defendants' refusal

substantially burdened plaintiff's religious exercise. The court thus won't grant summary judgment on this claim.

On the other hand, a claim under § 1983 requires personal involvement. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation" (quotation cleaned up)). Here, the summary judgment record offers no facts implicating Sheriff Armbrister or Captain Bellinger, in their individual capacities. The court thus grants summary judgment to those two defendants on plaintiff's holiday-meal claims.

### 3. RLUIPA

Plaintiff also brings claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Doc. 44 at 14–15. For much the same reason that defendants' arguments against plaintiff's Free Exercise claim fail, the court won't grant summary judgment against plaintiff's RLUIPA claim.

Under RLUIPA, a plaintiff can assert a claim against a governmental actor who "'impose[s] a substantial burden on the religious exercise of a person residing in or confined to an institution[.]'" *Abdulhaseeb*, 600 F.3d at 1312 (quoting 42 U.S.C. § 2000cc-1(a)). If the plaintiff makes a showing that a governmental actor imposed such a substantial burden, the governmental actor can justify its action if it shows that the burden imposed on the plaintiff "'is in furtherance of a compelling governmental interest'" and "'is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a)). As the court discussed earlier, *see above* note 7, RLUIPA incorporates the same substantial-burden test as the First Amendment Free Exercise Clause. *Williams*, 5 F.4th at 1133.

Here, defendants' only argument against plaintiff's RLUIPA claim is that the government hasn't burdened his religious exercise substantially. Doc. 71 at 20. This argument fails for the

same reason it did in the context of plaintiff's Free Exercise claim. The substantial-burden inquiry ordinarily is inapt for summary judgment. *E.g.*, *Kay*, 500 F.3d at 1219. And defendants haven't attempted to prove that the burden they imposed was pursuant to a compelling governmental interest. *See generally* Doc. 71. The court thus won't grant summary judgment against plaintiff's RLUIPA holiday-meal claim, either.

But, as the court explained in an earlier Order, Doc. 18 at 16, plaintiff may not assert a RLUIPA claim against any defendant in their individual capacity. *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) ("We . . . hold that there is no cause of action under RLUIPA for individual-capacity claims."). Plaintiff's RLUIPA claim thus is viable only against Captain Bellinger, the sole defendant plaintiff sues in an official capacity. *See* Doc. 44 at 2.[9]

### 4. KPRFA

Plaintiff also asserts a claim under the Kansas Preservation of Religious Freedom Act (KPRFA). Doc. 44 at 14–15. The substantive standards for proving a violation of KPRFA are the same as RLUIPA. *See* Doc. 18 at 9 (explaining that KPRFA "imposes similar standards" to RLUIPA); *see also* Kan. Stat. Ann. § 60-5303(a) (mirroring language of 42 U.S.C. § 2000cc-1(a)). Because defendants have failed to carry their summary judgment burden on the substantial-burden inquiry under RLUIPA, they also have failed to carry their burden for KPRFA. The court thus declines to grant summary judgment against plaintiff's KPRFA claim.

Defendants argue that KPRFA, like RLUIPA, provides no individual-liability cause of action. To support this argument, defendants point to the text of KPRFA. It provides that

---

[9]    An official capacity suit "is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). Plaintiff's suit against Captain Bellinger, in his official capacity, is thus a suit against the DCCF.

"'government shall not substantially burden a person's civil right to exercise [of] religion[.]'"
Doc. 71 at 20 (quoting Kan. Stat. Ann. § 60-5303(a)).

The court isn't persuaded. KPRFA defines the word "government" to include "any
person acting under color of law." Kan. Stat. Ann. § 60-5302(e). Based on the plain language of
that definition, defendants here—employees of a governmental institution—meet KPRFA's
definition of "government." The court thus declines to dismiss plaintiff's individual-capacity
KPRFA claim, at least on the limited argument provided by defendants.[10]

Plaintiff's KPRFA claim thus survives against Lieutenant Gonzalez and Major Bunting,
in their individual capacities, and against Captain Bellinger, in his official capacity. (Remember,
the court already dismissed plaintiff's claims against Sheriff Armbrister because plaintiff hasn't
adduced evidence of his individual involvement.)

### 5. Kansas Constitution

Plaintiff also asserts claims arising under the Kansas Constitution. Doc. 44 at 6–7
(asserting violations of § 1 and § 7 of the Kansas Constitution Bill of Rights). Defendants argue
that plaintiff's claim for damages isn't viable under the Kansas Constitution. Doc. 71 at 17.
Plaintiff makes no response to this argument. *See generally* Doc. 76.

The court agrees with defendants: Plaintiff can't assert a cause of action directly under
the Kansas Constitution. "Kansas law does not permit a claim for monetary damages brought

---

[10]    One might argue that RLUIPA contains a similar definition of government. *See* 42 U.S.C. §
2000cc-5(4)(A)(iii) (including "any other person acting under color State law" in definition of
"government"). And our Circuit has held that RLUIPA offers no individual-capacity cause of action.
*Stewart*, 701 F.3d at 1335. The problem with this argument is that *Stewart* interpreted RLUIPA against
the backdrop of Congress's limited Spending Clause power. *Id.* at 1334–35 (explaining that "Spending
Clause legislation operates like a contract, and individual RLUIPA defendants are not parties to the
contract in their individual capacities" (quotation cleaned up)). The Spending Clause doesn't constrain
the Kansas Legislature like it does Congress. The principal reason that *Stewart* employed for limiting
RLUIPA to official-capacity claims thus doesn't apply to KPRFA.

directly under the Kansas Constitution." *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1203 (D. Kan. 2018); *see also Prager v. Kan. Dep't of Revenue*, 20 P.3d 39, 36–37 (Kan. 2001) ("Kansas has so far rejected *Bivens*-type actions (*i.e.*, actions . . . for damages based directly under the Constitution without implementing legislation)."). And as already explained, any claim for equitable relief is now moot. In sum, plaintiff lacks any viable claim under the Kansas Constitution, so the court grants summary judgment against any such claims.

The court next addresses defendants' assertions of qualified immunity.

### 6. Qualified Immunity

Defendants assert the defense of qualified immunity. Doc. 71 at 23–24.

The "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant has "asserted the defense of qualified immunity, the burden is on Plaintiffs to establish their right to proceed." *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018); *Bledsoe v. Carreno*, 53 F.4th 589, 617 n.25 (10th Cir. 2022) ("Appellants are correct that once they asserted qualified immunity in the district court, which they did here, it was [plaintiff's] burden to show both that he had alleged a constitutional violation and that that violation was clearly established."). If plaintiff fails to carry that burden, "'the defendant prevails on the defense'" and the plaintiff's claims "are dismissed." *Losee v. Preece*, No. 18-CV-195-TC, 2022 WL 957194, at *5 (D. Utah Mar. 30, 2022) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016)).

A constitutional right is clearly established when, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the

officer's conduct beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)

(internal quotation marks and citations omitted).  A plaintiff can't defeat qualified immunity

"simply by alleging violation of extremely abstract rights," *White v. Pauly*, 580 U.S. 73, 79

(2017), and a court shouldn't "define clearly established law at a high level of generality,"

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

 Defendants don't deserve qualified immunity here because—at least on this meager

summary judgment record—a rational trier of fact could find or infer that they violated clearly

established law.  Our Circuit has "long recognized that prisoners have the right under both the

First Amendment and RLUIPA to a diet that conforms to their sincerely held religious beliefs."

*Blair v. Raemisch*, 804 F. App'x 909, 916 (10th Cir. 2020); *see also Beerheide*, 286 F.3d at 1185

("This circuit recognizes that prisoners have a constitutional right to a diet conforming to their

religious beliefs.").  A jury reasonably could find that defendants refused to serve plaintiff a "diet

conforming to [his] religious beliefs." *Beerheide*, 286 F.3d at 1185.  So, defendants don't

deserve qualified immunity at this stage of this proceeding.[11]

 In fact, the only justification that defendants Lieutenant Gonzalez and Major Bunting

cited for denying plaintiff's requested accommodations is that they couldn't find any doctrinal

support in Norse Paganism for it.  But Circuit precedent dictates that the centrality of a belief to a

particular religion isn't a relevant inquiry.  *See Yellowbear*, 741 F.3d at 54 ("Neither must the

---

[11]     Defendants' assertion of qualified immunity on this claim is also perfunctory, consisting of a
single sentence.  *See* Doc. 71 at 24 ("Similarly, there is no guidance provided on an inmate's request for
additional holy days when [plaintiff's] original specified holy days are being observed.").  That
perfunctory presentation independently justifies denying defendants' qualified immunity at this stage.
*See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) ("Arguments may be deemed waived
when they are advanced in an opening brief only in a perfunctory manner." (quotation cleaned up)); *see
also Tillmon v. Douglas County*, 817 F. App'x 586, 589–90 (10th Cir. 2020) (explaining that single-
paragraph, "cursory" presentation of qualified immunity defense wasn't adequate to preserve it for
appellate review).

religious claimant prove that the exercise at issue is somehow 'central' or 'fundamental' to or 'compelled' by his faith.  Just as civil courts lack any warrant to decide the truth of a religion, in RLUIPA Congress made plain that we also lack any license to decide the relative value of a particular exercise to a religion.").

What's more, defendants never justify their actions in terms of penological interests.  Our Circuit has held that such a failure independently may warrant denying qualified immunity on a Free Exercise claim.  *See Boles*, 486 F.3d at 1184 ("[A prison official's] actions were reasonable and he is entitled to qualified immunity only if the regulation that he relied on was reasonably related to a legitimate penological interest.  Since . . . there is nothing in the record to indicate as much, he has not established the defense of qualified immunity.").  Defendants don't deserve qualified immunity—at least not on this summary judgment record.

Finally, the court tackles § 1983 municipal liability.

### 7.  **Municipal Liability**

"A municipality or other local government may be liable under" § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  But municipalities "are responsible only for 'their *own* illegal acts'" and "are not vicariously liable under § 1983 for their employees' actions."  *Id.* (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see also George v. Beaver County*, 32 F.4th 1246, 1253 (10th Cir. 2022) (same).

To establish municipal liability under § 1983, "'a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.'"  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).  A plaintiff may

establish such municipal policy or custom by alleging facts capable of demonstrating one of the
following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or usage
> with the force of law; (3) the decisions of employees with final policymaking
> authority; (4) the ratification by such final policymakers of the decisions—and the
> basis for them—of subordinates to whom authority was delegated subject to these
> policymakers' review and approval; or (5) the failure to adequately train or
> supervise employees, so long as that failure results from deliberate indifference to
> the injuries that may be caused.

*Id.* (internal quotation marks, brackets, and citation omitted).

Here, defendants argue that there's no evidence that a municipal policy or custom that
caused plaintiff's injuries.  Doc. 71 at 21–23.  Plaintiff never responds to this proposition.  *See
generally* Doc. 76.  This "failure to respond is fatal to his claim[]."  *Hinsdale v. City of Liberal*,
19 F. App'x 749, 769 (10th Cir. 2001) (affirming grant of summary judgment on municipal
liability claims where plaintiff failed to respond to defendants' arguments).  The court's
independent review of the summary judgment record reveals why:  there's no basis for finding a
policy or custom caused plaintiff's injuries.  *See Reed*, 312 F.3d at 1194–95 (explaining that—
even when opposing party fails to respond—the court may grant summary judgment only where
the moving party "met its initial burden of production under Rule 56(c)").  The court finds that
defendants met their initial burden under Rule 56(c)(1)(B).  They asserted that plaintiff "cannot
produce [any] evidence to support" an essential factual element of his municipal liability claim.
*Id.*; *see also Celotex Corp.*, 477 U.S. at 322–23 ("[T]he the plain language of Rule 56(c)
mandates the entry of summary judgment, after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear the burden of proof at trial.  In
such a situation, there can be no genuine issue as to any material fact, since a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (internal quotation marks omitted)).  It thus grants summary judgment on any § 1983 municipal liability or § 1983 official liability claims plaintiff asserts.

## IV.    Conclusion

To summarize, the following claims—based on defendants refusing plaintiff's requested holiday meals—survive this Order:

- plaintiff's First Amendment Free Exercise claim against Lieutenant Gonzalez and Major Bunting, in their individual capacities; and

- plaintiff's RLUIPA claim against Captain Bellinger, in his official capacity; and

- plaintiff's KPRFA claim against Lieutenant Gonzalez and Major Bunting, in their individual capacities, and against Captain Bellinger, in his official capacity.

The court grants summary judgment against all other claims, including plaintiff's claims based on his religious-text allegations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Dustyn Polk's Motion for Partial Summary Judgment (Doc. 66) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion for Summary Judgment (Doc. 70) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** the Clerk update plaintiff's address and mail a copy of this Order to him, as provided in footnote 5.

**IT IS SO ORDERED.**

**Dated this 2nd day of July 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**